**GENERAL ELECTRIC CREDIT COR-
PORATION OF TENNESSEE,
Plaintiff–Appellee,**

v.

**KELLY & DEARING AVIATION, A Part-
nership, Nathan J. Dearing, III, Charles
S. Kelly, and Aetna Casualty & Surety
Company, Defendants,**

and

**Aetna Casualty & Surety Company,
Defendant–Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 14, 1988.

Rehearing Denied Oct. 18, 1988.

Application to Appeal Denied by
Supreme Court Dec. 27, 1988.

Charles G. Walker, Russell W. Savory, Petkoff, Lancaster & Walker, Memphis, for plaintiff-appellee.

James W. McDonnell, Jr., Thomas J. Walsh, Jr., Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, for defendant-appellant Aetna Cas. & Sur. Co.

FARMER, Judge.

In 1979 Nathan Dearing and Charles Kelly formed a partnership known as Kelly & Dearing Aviation (K & D) for the purpose of purchasing a 1979 Piper Aztec. They

obtained the funds for this purchase from General Electric Credit Corporation (GECC) and in return gave GECC a promissory note for $130,000.00 and a secured interest in the airplane.

On February 23, 1982 K & D leased this plane to Ray Ownby, who purportedly was a real estate broker from East Tennessee. The lease was for a term of twelve months, with an option to purchase at the end of that time, and provided for payments of $2,732.00 per month. The lease made no mention of the lessee's business or his intended use for the plane, nor were any territorial limitations included in it.

Ownby contacted Worldwide Aviation Insurance Company and spoke to its representative about obtaining insurance coverage for himself as lessee of the plane and K & D as the lessors. William Shoun, the proposed pilot, and GECC also requested binders. Based on the information supplied in the application, Aetna issued a policy. Shoun was listed on the policy as the pilot, and Aetna also approved any person who had flown "a minimum of 2000 hours as Pilot In Command, at least 750 hours of which shall have been in Multi–Engine aircraft and at least 25 hours of which shall have been in PIPER PA–23 aircraft." Ownby requested that the insurer also approve him as a pilot, but he was refused since he did not meet the minimum requirements set forth in the policy.

The policy issued to Ownby and K & D stated:

**When and where you are covered.** You[1] are covered for occurrences that take place during the policy period while your aircraft described on the Coverage Summary page is in the United States and its territories and possessions, Canada, Mexico, the Bahama Islands, or while enroute between these places.

There was also a provision entitled "Aircraft damage we won't cover." Found in this section were the following exclusions:

**Embezzlement.** We won't cover loss or damage to your aircraft caused when someone with a legal right to possess the aircraft embezzles or converts it under a lease, rental agreement, conditional sale, mortgage or other legal agreement governing the use, sale or lease of property.

**War-confiscation.** We won't cover loss or damage to your aircraft caused by declared or undeclared war, invasion, rebellion or by the seizure or detention of the aircraft by any government. Nor will we cover damage to your aircraft done by or at the direction of any government.

For the additional premium of $50.00, a lienholder's endorsement was included to protect the interest of GECC. That endorsement provided in part:

*What this endorsement does.* This endorsement expands *Your Aircraft Physical Damage Coverage* to protect the interest of the lienholder or lessor of the aircraft listed in the Schedule below. Should you do anything which makes your coverage invalid, we will still make a payment to that lienholder or lessor.

. . . .

*What's not covered.* We won't cover your conversion, embezzlement or secretion of the aircraft.

. . . .

This endorsement does not change any of your coverage except as stated above.

This policy was in effect when the aircraft was seized by the government of Colombia, South America. The parties entered into a stipulation of facts which included the following:

8. The aircraft insured by the policy and bearing registration number N–6602A was seized in Colombia by the Colombian Air Force on or about May 18, 1982. Ray Ownby was piloting the aircraft at the time and was detained at the Department of Administrative Security at Santa Maria, Colombia.

9. The aircraft is presently under the legal control of the Second Tribunal (Court of Justice) of the Penal Circuit of

**1.** The policy stated that: "The words *you* and *yours* refer to the person or organization named on the Coverage Summary page." In this case *you* refers to Ownby who was listed as Lessee and K & D as Lessors.

Santa Maria, Colombia, South America. Official documents of the Military Forces of Colombia and of the U.S. Department of State describing the circumstances of the confiscation are attached hereto as Exhibit "4."

10. Following the confiscation of the aircraft in question Ray Ownby and William Shoun were sentenced to serve time in the U.S. federal penitentiary for criminal charges related to the illegal transportation of drugs. They have refused to give testimony in this case, citing their rights under the Fifth Amendment to the U.S. Constitution.

One of the documents included in Exhibit 4, referred to in paragraph 9, recites that the plane was subject to confiscation for clandestine entry into Colombia by air.

Ownby notified K & D of this seizure, and K & D contacted GECC, who informed the insurer. After investigating the claim, Aetna discovered that Ownby, who was not an approved pilot, had flown the airplane outside the territorial limitations of the policy, where it was confiscated by the Colombian government. Further, it concluded that Ownby had converted the airplane. As a result of these "various policy violations," it denied coverage to Ownby and K & D. Aetna also denied coverage under the lienholder's endorsement to GECC, which led GECC to bring this suit.

At the conclusion of the evidence the trial court held that the lienholder endorsement created an independent obligation between GECC and Aetna. Based on the broad language of the endorsement, which protected GECC despite any acts by the insured, except embezzlement, conversion and secretion of the aircraft, it ordered Aetna to pay GECC its claim under the policy, plus prejudgment interest.

Aetna appeals from this decision and raises two issues for our review: (1) Do acts of material misrepresentation by an insured render a policy of insurance void *ab initio* such that the attached lienholders endorsement is also void; and (2) Where loss of an aircraft occurs by government seizure and lessee conversion, can a lienholder still recover? The facts in this case are not at issue. Therefore, the scope of our review is *de novo* with no presumption of correctness of the trial court's conclusion of law. *Billington v. Crowder,* 553 S.W.2d 590 (Tenn.App.1977).

Aetna argues that there was only one policy of insurance, and that policy was void *ab initio* due to the misrepresentations made by the insureds as to the location and use of the plane and the identity and qualifications of the pilot[2]. Aetna bases this defense on the information supplied it by Ownby in his application for insurance. It asserts that had the true facts been known, no policy would have been issued; that is, these misrepresentations were material to its decision to issue the policy and substantially increased the risk it agreed to assume. Aetna points out that such misrepresentations do not have to be intentional to void the policy, if they increase the risk of loss assumed by the insurer. *Thurmond v. Mutual Life Ins. Co. of N.Y.,* 716 S.W.2d 37 (Tenn.App. 1986). It contends the misrepresentations by the insureds should not only render the policy void, but void *ab initio*. That is, the policy should be considered as if it never existed. In that event, there would have been no insurable interest to which a lienholder's endorsement could have attached.

GECC, on the other hand, argues that there were actually two policies of insurance: one issued to Ownby and K & D, the other to GECC. This latter policy states that regardless of any action taken by the named insureds, which GECC asserts would include misrepresentations made by K & D or Ownby in attaining their policy, payment will still be made to the lienholder. The only exceptions to this would be the conversion, embezzlement, or secretion of the aircraft by K & D or Ownby. Since the trial court made no such findings, GECC argues that they should be paid under this second policy.

---

2. In Aetna's answer to the complaint, it asserted that these misrepresentations were made only by K & D. In its brief, however, it included Ownby in this allegation.

■ Aetna contends that the insureds made material misrepresentations in the application with respect to the location and use of the aircraft and the identity and qualifications of the pilot. We have neither found nor been cited to any evidence in the record that the representations contained in the application were false at the time the application was made. Although Ownby violated provisions of the policy, we do not find such actions tantamount to misrepresentations in the application.

Furthermore, in Tennessee clauses such as this, lienholder's endorsement have long been held to create "a separate and independent contract between the insurer and the mortgagee that the latter's rights cannot be invalidated by any act or neglect of the mortgagor or insured. . . ." *Third National Company v. Thompson,* 191 S.W.2d 190, 193 (Tenn.App.1945). *See also,* Couch on Insurance 2d, § 74:347. Nevertheless, Aetna now argues that the coverage for GECC should be limited to the risk stated in the main policy. It contends that it should be understood that the terms of the endorsement refer back to the main policy. The broad language of this endorsement, however, does not specifically refer to the main policy. We must, therefore, interpret this contract as written, giving the terms in it their plain meaning. *Guardian Life Ins. Co. of America v. Richardson,* 129 S.W.2d 1107 (Tenn.App.1939); *Paul v. Insurance Company of North America,* 675 S.W.2d 481 (Tenn.App.1984).

■ The language used in the lienholder's endorsement provides that, regardless of whether the insured does anything which would cause his coverage to be invalidated, the insurer will pay the lienholder. In this case Ownby, an unauthorized pilot, flew the plane outside the territorial limitations of his policy. As a result of his actions, the Colombian government seized the plane. Aetna properly denied coverage to the named insured; however, unless conversion, embezzlement or secretion by Ownby or K & D can be shown, GECC is entitled to payment under the lienholders endorsement.

"A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of Plaintiff's right." *Barger v. Webb,* 391 S.W.2d 664, 665 (Tenn.1965). While this may seem to be a straightforward definition, in actuality the tort of conversion has highly technical rules, which make it difficult to define in concrete terms.

The main focus of the tort is the interference with an owner's property right. The degree of this interference, as well as the impact on the property, determines whether there has been a conversion. For example, if a defendant test drives a car, which an owner has for sale, with the owner's permission, there has been no conversion because there has been no interference with that owner's dominion over the car. If damage occurs to the car while the defendant is driving it, he may be liable in damages for negligence, but not conversion. However, if while the defendant is test driving the car, he exceeds the owner's permission by driving it 1,000 miles, or using it for illegal transportation of drugs, which results in it being confiscated by the government, this is conversion because it is a clear departure from the implied use authorized by the owner, and as a result of this action, the owner has been deprived of his property. Prosser and Keeton, Law on Torts, *Conversion,* § 15, at 101 (5th Ed. 1984). The tort of conversion is complete once the defendant has taken, detained, or disposed of a chattel for an unreasonable length of time. Prosser, *supra,* at 106.

To constitute conversion, the defendant must intend to convert the property. This intention does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him. Prosser, *supra,* at 92. A defendant cannot undo his wrong by merely returning the property to the owner. Here again, it is the degree of interference with the chattel, as well as the duration of that interference, that will be determinative of whether there

has been conversion. Prosser, *supra*, at 106.

In the case at bar, Ownby had legal possession of the airplane pursuant to his lease from K & D. The lease contained no territorial or other limitations on his use of the aircraft, however, K & D had the right to assume that Ownby would use it for legal purposes.

Ownby's actions in his use of this leased airplane was in reckless disregard for K & D's right, as owner of the airplane, to repossession of the property. His action clearly exceeded K & D's implied consent for his operation of the plane and has completely deprived them of their property for an indefinite period of time. This intentional act by Ownby constituted conversion.

Since the act of conversion was explicitly excluded from coverage in the lienholder's endorsement, we find that Aetna is not liable for payment to GECC under this policy. The judgment of the trial court is therefore reversed. Costs are assessed to GECC for which execution may issue if necessary.

TOMLIN, P.J., W.S., and SUMMERS, Special Judge, concur.