IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 3, 2020

## JACK KAUFFMAN ET AL. v. TIMOTHY G. FORSYTHE ET AL.

**Appeal from the Circuit Court for Rhea County**
**No. 2019-CV-49      Justin C. Angel, Judge**

_____

### No. E2019-02196-COA-R3-CV

_____

A property owner shot and injured a trespassing dog. The dog's owner, a family member, and an unrelated party posted negative comments about the property owner during his campaign for public office. After losing the election, the property owner and his wife sued the three individuals for defamation and false light invasion of privacy. The defendants filed a countercomplaint seeking damages for trespass to chattels, conversion, negligence, and trespass. The trial court dismissed all claims. The court also issued a restraining order enjoining the parties from making public comments about each other. We affirm the trial court's finding that the property owner was a public figure when the allegedly defamatory statements were published. But because we conclude that the complaint sufficiently alleged actual malice, we reverse the dismissal of the defamation and false light invasion of privacy claims. We further conclude that the countercomplaint stated a cause of action for trespass to chattels, conversion, negligence, and trespass. So we reverse the dismissal of those counterclaims. We also vacate the restraining order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Vacated in Part

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Howard L. Upchurch, Pikeville, Tennessee, for the appellants, Karen A. Kauffman, and Jack Kauffman.

Andrew F. Tucker, Dayton, Tennessee, for the appellees, Tana R. Bishop, Timothy G. Forsythe, and Jason F. Williams.

# OPINION

## I.

### A.

One Fourth of July evening, Tana Bishop's dogs entered Jack and Karen Kauffman's property and cornered one of their cats. Fearing for the safety of the cat, Mr. Kauffman fired two warning shots to scare the dogs away. When one of the dogs did not retreat, Mr. Kauffman fired again, injuring the dog's leg.

Two days later, Ms. Bishop complained about the incident on social media. In her post, she called Mr. Kauffman evil and accused him of overreacting. After reading Ms. Bishop's post, Jason Williams posted his own negative opinion about Mr. Kauffman.

In January 2018, Mr. Kauffman picked up a qualifying petition to run for a seat on the Rhea County Commission. Ms. Bishop and Mr. Williams continued to post negative comments about Mr. Kauffman throughout his election campaign. Mr. Williams posted, "[w]atch out for Jack (me off) Kauffman. He's running for district 4 county commission but get[s] arrested often[.]" In one post, Ms. Bishop questioned Mr. Kauffman's fitness for public office. Calling him "mentally unstable," she stated he had problems ranging "[f]rom child abuse investigations to burning down houses to animal cruelty issues."

Timothy Forsythe, the grandfather of Ms. Bishop's children, also voiced his negative opinion of Mr. Kauffman on social media. He posted two pictures of a Kauffman campaign sign, one standing upright and the other crumpled on the ground, with the following message: "Kauffman, if I ever see your **** in my yard again I'll hunt you down like the dog you are[.] I'm not a thirteen year old kid and I'll take you out." Mr. Forsythe later added a comment to his post, explaining that Mr. Kauffman "was told to leave my property and not come back, when we got home this is what we found. Very bad move."

### B.

After Mr. Kauffman lost the election, he and his wife sued Ms. Bishop, Mr. Forsythe, and Mr. Williams (collectively, the Defendants) for defamation, false light invasion of privacy, and negligent and intentional infliction of emotional distress. The Kauffmans sought compensatory and punitive damages.

Defendants pled several affirmative defenses in their answer. They also filed a countercomplaint.[1] The countercomplaint alleged that Mr. Kauffman intentionally and/or

---

[1] Although Mr. Williams was named as a counterplaintiff, none of the factual allegations in the countercomplaint pertain to him.

recklessly shot Ms. Bishop's dog even though the dog was not a threat to Mr. Kauffman, his family, or his property.  It also alleged that Mr. Kauffman or his agent placed a campaign sign in Mr. Forsythe's yard without permission.  Ms. Bishop sought damages for conversion, trespass to chattels, and/or negligence.  Mr. Forsythe asserted a trespass claim.

Defendants also filed a motion for judgment on the pleadings.  *See* Tenn. R. Civ. P. 12.03.  They argued that the applicable statute of limitations precluded any claims based on statements made more than a year before the complaint was filed.  *See* Tenn. Code Ann. § 28-3-104(a)(1)(A) (2017).  They also asserted that any remaining defamation and false light claims should be dismissed because the complaint failed to allege actual malice.

The court agreed that any claims based on statements made more than a year before the complaint was filed were time barred.  The court also ruled that Mr. Kauffman became a public figure in January 2018 when he entered the race for the Rhea County Commission. As a public figure, he could not recover for defamation absent proof that Defendants made the alleged defamatory statements with actual malice.  The court determined that the complaint lacked any factual allegations to support a finding of actual malice.  So it dismissed the Kauffmans' claims with prejudice.[2]

The Kauffmans also filed a motion to dismiss the conversion counterclaim for failure to state a claim for relief.  *See* Tenn. R. Civ. P. 12.02(6).  The court dismissed the conversion counterclaim with prejudice.  *Sua sponte*, the court also dismissed the remaining counterclaims without prejudice.  And the court issued a restraining order that barred all parties "from making public comments about or related to any other party" for one year.  The order further enjoined the parties "from making negative or disrespectful comments about one another to third parties while the restraining order is in effect."

## II.

### A.

The Kauffmans argue that the trial court erred in dismissing their defamation and false light invasion of privacy claims for failure to allege actual malice.  We review the grant of a motion for judgment on the pleadings using the same standard of review as a Rule 12.02(6) motion to dismiss.  *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).  We accept the truth of the factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff.  *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004).  Viewed in that light, the complaint "must contain sufficient factual allegations to articulate a claim for relief." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010).  The

---

[2] The Kauffmans do not raise the dismissal of their claims for negligent and intentional infliction of emotional distress as an issue on appeal.

3

complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).

In Tennessee, a plaintiff in a defamation case must prove "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). A public figure cannot rely on the negligence standard. Instead, a public figure must prove that the defendant published the allegedly defamatory statement with "actual malice." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005). The actual malice standard also applies to false light claims brought by a public figure. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

Whether a plaintiff is a public figure is a question of law. *Ferguson v. Union City Daily Messenger, Inc.*, 845 S.W.2d 162, 166 (Tenn. 1992). We have little difficulty concluding that Mr. Kauffman was a public figure when the allegedly defamatory statements were published. The statements were made during Mr. Kauffman's election campaign. The term "public figure" includes "those who have thrust themselves into the vortex of important public controversies." *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). Candidates for elected public office are public figures. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-72 (1971); *Taylor v. Nashville Banner Publ'g* Co., 573 S.W.2d 476, 478, 482 (Tenn. Ct. App. 1978).

As a candidate for public office, Mr. Kauffman's qualifications, background, and character were subjects of public concern. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 687 (1989) ("When a candidate enters the political arena, he or she 'must expect that the debate will sometimes be rough and personal.'" (citation omitted)); *Monitor Patriot Co.*, 401 U.S. at 275 ("Given the realities of our political life, it is by no means easy to see what statements about a candidate might be altogether without relevance to his fitness for the office he seeks."). So both criteria for application of the actual malice standard are satisfied here. *See Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 296 (Tenn. Ct. App. 2007)), *abrogation on other grounds recognized by Burke v. Sparta Newspapers, Inc.*, 592 S.W.3d 116 (Tenn. 2019).

Actual malice is a term of art. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 499 (1991). To publish a statement with "actual malice," a defendant must act "with knowledge that [a statement] was false or with reckless disregard of whether it was false or not." *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 212 (Tenn. 2019) (alteration in original) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)). Reckless disregard of the truth means that the defendant "entertained serious doubts as to the truth of [the statements]." *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 667 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). This standard "is a subjective one," requiring that

the defendant make the statements with a "high degree of awareness of . . . probable falsity." *Id.* at 688 (alteration in the original) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). In other words, the defendant must have acted with "purposeful avoidance of the truth." *Id.* at 692.

The trial court dismissed the defamation and false light invasion of privacy claims solely because the Kauffmans failed to allege that allegedly defamatory statements were published with actual malice. But the complaint alleged that the defendants were "negligent and/or reckless in ascertaining the truth" of their statements about Mr. Kauffman. We agree that allegations of "mere negligence" are not enough. *Masson*, 501 U.S. at 510. But the Kauffmans also alleged reckless disregard. And reckless disregard, if proven, does constitute actual malice. *See New York Times*, 376 U.S. at 279-80 (A public figure may recover damages in a defamation action if he can "prove[] that the statement was made . . . with reckless disregard of whether it was false or not.").

"[A] complaint should not be dismissed, no matter how poorly drafted, if it states a cause of action." *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Construing the complaint liberally, as we must, we conclude that Mr. Kauffman sufficiently alleged actual malice. So we reverse the dismissal of his claims for defamation and false light invasion of privacy.

## B.

For their part, Defendants challenge the trial court's dismissal of their counterclaims. They first complain that the court dismissed the majority of their counterclaims without a pending motion to dismiss. A trial judge has the authority to dismiss a claim *sua sponte* "when he is of the opinion that the complaint fails to state a claim upon which relief may be granted." *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975). So we review the court's dismissal of the counterclaims using the familiar standard of review for a Rule 12.02(6) motion to dismiss. *See Webb*, 346 S.W.3d at 426-27.

Ms. Bishop asserts that the factual allegations in the countercomplaint entitle her to damages for trespass to chattels, conversion, and/or negligence. Taking those allegations as true, Mr. Kauffman intentionally or recklessly shot and injured Ms. Bishop's dog, and the dog was not a threat to Mr. Kauffman, his family, or his property. Also, Ms. Bishop incurred "several thousand dollars" in veterinarian bills to treat her dog's injuries.

Trespass to chattels and conversion are intentional torts involving interference with an owner's property rights. RESTATEMENT (SECOND) OF TORTS §§ 217, 222A (AM. LAW INST. 1965). A pet dog is personal property. *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 700 (1897) ("By the common law, as well as by the law of most, if not all, the states, dogs are so far recognized as property that an action will lie for their conversion or

injury."); *Wheatley v. Harris*, 36 Tenn. (4 Sneed) 468, 470 (1857) ("[T]he law upon the point of the master's property in a dog is well settled."); *DeLany v. Kriger*, No. W2018-01229-COA-R3-CV, 2019 WL 1307453, at *4 (Tenn. Ct. App. Mar. 20, 2019) ("Domestic pets are considered private property in this state."). So, interference with Ms. Bishop's dog may entitle her to relief if the requisite elements of these torts are met.

A plaintiff may recover for trespass to chattels upon showing that another party "intentionally use[d] or intermeddle[d] with [the plaintiff's] personal property . . . without authorization." *Garner v. Coffee Cty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *6 (Tenn. Ct. App. Oct. 23, 2015) (citing RESTATEMENT (SECOND) OF TORTS § 217(b)). As her claim does not involve dispossession, Ms. Bishop must also show that her dog's "condition, quality, or value" was impaired. RESTATEMENT (SECOND) OF TORTS § 218(b) & cmt. e. The factual allegations in the countercomplaint support a claim for trespass to chattels. "'Intermeddling' means intentionally bringing about a physical contact with the chattel." *Id.* § 217 cmt. e. "[D]irecting an object or missile" at a dog is intermeddling. *See id.* And the dog was injured.

A successful conversion claim, on the other hand, requires proof that the defendant appropriated the plaintiff's tangible personal property for his or her own use and benefit by intentionally exercising dominion over the property in defiance of the plaintiff's rights. *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965); *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). Mr. Kauffman argued that injuring a dog did not meet conversion's more technical requirements. *See Gen. Elec. Credit Corp. of Tenn. v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988) (recognizing that "the tort of conversion has highly technical rules"). The trial court agreed with Mr. Kauffman. We do not.

"[D]estroying or altering" another party's personal property can be actionable as conversion. RESTATEMENT (SECOND) OF TORTS § 223(b). *But see Ivey v. Hamlin*, No. M2001-01310-COA-R3-CV, 2002 WL 1254444, at *1, *4 (Tenn. Ct. App. June 7, 2002) (holding that conversion was not implicated when a sheriff's deputy shot and killed an aggressive dog who had been reported as "running loose and terrorizing [a] family"). The Restatement recognizes that "[o]ne who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character is subject to liability for conversion." RESTATEMENT (SECOND) OF TORTS § 226.

Ms. Bishop's dog survived the interaction with Mr. Kauffman. So for Ms. Bishop to state a claim for conversion, the damage to the dog "must be so material as to change the identity of the [dog] or its essential character." *Id.* cmt. d; *see Gen. Elec. Credit Corp. of Tenn.*, 765 S.W.2d at 753 (explaining that the degree of "interference, as well as the impact on the property, determines whether there has been a conversion"). Anything less "may be a trespass to the chattel . . . , but it is not a conversion." RESTATEMENT (SECOND) OF TORTS § 226 cmt. d.

6

The difference between conversion and trespass to chattels "is nearly always one of degree." *Id.* § 222A cmts. c, d. The Restatement provides two helpful illustrations:

> A intentionally shoots B's horse, as a result of which the horse dies. This is a conversion. The same facts . . . except that the horse is merely scratched, and quickly recovers. This is not a conversion.

*Id.* cmt. d, illus. 17-18.

> A intentionally feeds poisonous weeds to B's horse. The horse is made ill for a few hours, but promptly recovers. This is a trespass to the horse, but not a conversion. If, however, the horse is made ill for a month, there is both a trespass and a conversion.

*Id.* § 226 cmt. d, illus. 4.

Considering these illustrations, we conclude that Ms. Bishop has stated a claim for conversion. The countercomplaint alleged that the cost to treat the dog's injuries was "several thousand dollars." It would be reasonable to infer that the dog's injuries were "more than a scratch." *See id.* § 222A cmt. d, illus. 18. At this stage in the litigation, we cannot say that Ms. Bishop will be unable to prove that the injuries to her dog were serious enough to constitute conversion. *See Doe*, 2 S.W.3d at 922.

Turning to the negligence claim, Ms. Bishop must establish a duty of care, a breach of that duty, damages, and both factual and legal causation. *See Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013). All the elements of a negligence claim are satisfied here. A dog owner may recover damages for the intentional or reckless killing or injury of a dog. *Birdsong v. Wilkinson*, 13 Tenn. App. 276, 279 (1931). *But see* Tenn. Code Ann. § 44-17-403 (2007) (limiting damages for wrongful death of a pet). The fact that the dog was trespassing is not a bar to recovery. *White v. State*, 249 S.W.2d 877, 879 (Tenn. 1952). The owner or occupier of property has a duty to refrain from willfully, maliciously, or intentionally injuring a trespasser. *Yarbrough v. Potter*, 207 S.W.2d 588, 589 (Tenn. 1948).

Mr. Forsythe sought damages for trespass. Trespass protects a landowner's right to exclusive possession. *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). Any unauthorized entry upon the property of another is a trespass. *Id.* The injured party is entitled "to at least nominal damages." *Price v. Osborne*, 147 S.W.2d 412, 413 (Tenn. Ct. App. 1940). The countercomplaint alleged that Mr. Kauffman or his agent intentionally placed a campaign sign in Mr. Forsythe's yard without permission. These facts state a claim for trespass under Tennessee law.

Both defendants sought an award of punitive damages. Punitive damages are awarded "only in the most egregious of cases." *Hodges*, 833 S.W.2d at 901. The plaintiff seeking punitive damages must prove, by clear and convincing evidence, that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Id.*; *see* Tenn. Code Ann. § 29-39-104(a)(1) (Supp. 2020). The countercomplaint alleged that Mr. Kauffman intentionally or recklessly fired multiple shots in the direction of a non-threatening dog. These facts, if true, could support an award of punitive damages.

We reach a different conclusion on the placement of the campaign sign in Mr. Forsythe's yard. The trespass allegations simply do not rise to the level of egregious conduct required for a punitive damages award. *See Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 642 (Tenn. 1996) (limiting punitive damages in a trespass action to those rare cases "in which the trespass is accomplished fraudulently, wantonly, oppressively, or with gross negligence").

We conclude that the court properly dismissed Mr. Forsythe's claim for punitive damages. But the countercomplaint has factual allegations to support the required elements of the remaining claims for relief. *See Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992). So we reverse the court's dismissal of those claims.

C.

Finally, Defendants take issue with the court's restraining order. The court enjoined the parties from making any public comments about each other and from making any "negative or disrespectful comments" about each other to third parties. Defendants complain that the order unduly restricts their constitutional right to free speech. *See* U.S. CONST. amend. I; TENN. CONST. art. I, § 19.

"A court's equitable power to grant injunctions should be used sparingly, especially when the activity enjoined is not illegal, when the injunction is not requested, and when it is broader than necessary to achieve its purpose." *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *8 (Tenn. Ct. App. Dec. 29, 2006). We review the court's decision under the abuse of discretion standard of review. *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009). We will uphold the decision unless the court applied the wrong legal standard, reached an illogical or unreasonable decision, or based its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Judicial orders forbidding speech "are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). Such restraints must be "narrowly tailored to serve a compelling governmental interest." *Loden v. Schmidt*, No. M2014-01284-COA-R3-CV, 2015 WL 1881240, at *7 (Tenn. Ct. App. Apr. 24, 2015) (quoting *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009)).

8

Injunctions against defamatory speech are permissible in Tennessee.  *Id.* at *8; *In re Conservatorship of Turner*, No. M2013-01665-COA-R3-CV, 2014 WL 1901115, at *20 (Tenn. Ct. App. May 9, 2014).  But there must be a judicial determination that the speech is, in fact, false.  *Loden*, 2015 WL 1881240, at *9; *In re Conservatorship of Turner*, 2014 WL 1901115, at *20.  And the injunction must be "sufficiently narrow."  *In re Conservatorship of Turner*, 2014 WL 1901115, at *20.

None of these requirements have been met here.  The Kauffmans' defamation action was dismissed without a finding that the published statements were, in fact, false.  And the court's order was not limited to defamatory comments.  It enjoined the parties from making any public comments about each other.  The order was overly broad and infringed on constitutionally protected speech.  So we vacate the restraining order.

## III.

We reverse the dismissal of Mr. Kauffman's claims for defamation and false light invasion of privacy because the complaint contains sufficient allegations of actual malice. We also reverse the dismissal of Ms. Bishop's counterclaims for trespass to chattels, conversion, and negligence; Ms. Bishop's request for punitive damages; and Mr. Forsythe's counterclaim for trespass.  And we vacate the restraining order.  We affirm the dismissal of the remaining claims and Mr. Forsythe's request for punitive damages.  We remand this case to the trial court for such further proceedings, consistent with this opinion, that may be necessary.

_____
W. NEAL MCBRAYER, JUDGE

9