**DON CHAPMAN MOTOR SALES, INC., Appellant,**

v.

**NATIONAL SAVINGS INSURANCE COMPANY, Appellee.**

No. 13357.

Court of Appeals of Texas, Austin.

Dec. 9, 1981.

Rehearing Denied Jan. 20, 1982.

William R. Travis, McDaniel & Travis, Austin, for appellant.

J. Stockton Williams, Jr., Karen Parker, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

SHANNON, Justice.

Appellant, Don Chapman Motor Sales, Inc., loss payee on a physical damage automobile insurance policy, sued appellee National Savings Insurance Company in the district court of Travis County for recovery under appellee's policy and, in addition, for appellee's alleged deceptive acts and practices. Appellee denied coverage on the basis that the automobile was damaged while being operated by an unlicensed driver. After a bench trial, the district court rendered judgment that appellant take nothing. This Court will reverse that judgment.

### FACTS

Prior to May, 1977, Olivia G. Benavides purchased a used Chevrolet from appellant under a time payment agreement. The agreement provided that appellant should have a security interest in the automobile and that Mrs. Benavides should purchase physical damage insurance on the automobile, designating appellant as mortgage loss payee. Mrs. Benavides obtained the insurance and sent appellant a copy of the policy. On May 25, 1977, appellant notified Mrs. Benavides that the policy would expire on June 10, 1977, and requested that she renew the insurance coverage and furnish appellant a copy. Prior to June 10, Mrs. Benavides applied for insurance from appellee through the Mike Womach Insurance Agency of Austin. On June 22, appellee issued a renewed policy of insurance. The policy was signed by Arthur L. Smith, general

agent, and showed Mike Womach Insurance Agency as agent or broker. The policy contained a Form 112A Loss Payable Clause, Texas Standard Automobile Endorsement, showing appellant as loss payee. That clause provided in part:

112A. Loss Payable Clause: Loss or damage, if any, under the policy shall be payable as interest may appear to [Appellant], and this insurance as to [Appellant's] interest ... shall not be invalidated by an act or neglect of the ... mortgagor [Mrs. Benavides].

One of the exclusions in the policy provided:

This policy does not apply ... while the automobile is operated by ... any person under the minimum age required to obtain a license to operate a private passenger automobile....

Smith forwarded the insurance policy to the Mike Womach Insurance Agency.

Prior to July 23, 1977, the Mike Womach Insurance Agency was purchased by the Time Insurance Agency of Austin. On July 23, 1977, appellant received notice of cancellation of the insurance policy previously issued by appellee to Mrs. Benavides. The notice of cancellation was dated July 21, 1977, and was sent by Smith, general agent, showing that the reason for cancellation was non-payment of premiums. Upon receiving the cancellation notice from Smith, appellant, on the same day, wrote Mrs. Benavides informing her that the cancellation notice had been received and requesting her to take care of the matter immediately. Four days later on July 25, 1977, appellant received the renewed insurance policy issued by defendant as of June 10, 1977, under a cover letter dated July 22, 1977, from John P. Schuler of Time Insurance Agency, Inc., thanking Mrs. Benavides for her patronage. On August 2, 1977, appellee terminated this insurance policy without further notice to appellant.

On November 28, 1977, Mrs. Benavides permitted her son to drive the automobile at a time when he did not have a driver's license. On that date, the automobile was wrecked while being driven by the son.

Appellant did not know that Mrs. Benavides permitted her son to operate the automobile or that the automobile had been wrecked.

In February, 1978, appellant recovered possession of the automobile from Mrs. Benavides because she had failed to make timely payments, and discovered that the automobile had been wrecked. Appellant determined that the automobile was a total loss and disposed of it for salvage value, applying the proceeds to the reduction of the debt owed to him by Mrs. Benavides. After the application of such proceeds there remained an unpaid balance of $1,214.84. Appellant made demand upon appellee to pay this amount. Appellee refused to pay, relying upon its contention that the insurance policy was cancelled on August 2, 1977.

After entry of judgment, the district court filed findings of fact and conclusions of law. The district court found as a fact that appellant relied upon the receipt of the insurance policy from Schuler of Time Insurance Agency, believing the matter causing the issuance of the cancellation notice had been corrected and that the insurance would remain in force.

In its conclusions of law, the district court determined, among other things, that Smith was acting as agent for appellee insurance company when he forwarded the cancellation notice to appellant. Schuler of Time Insurance Agency, Inc., was acting also as the agent of appellee insurance company when he forwarded the insurance policy which appellant received on July 25, 1977. Accordingly, the district court concluded the act of forwarding the cancellation notice and the subsequent act of forwarding the insurance policy were acts of appellee, and were violations of regulations issued by the State Board of Insurance pursuant to Tex.Insur.Code Ann. art. 21.21 and Tex.Bus. & Comm.Code Ann. art. 17.-46(b)(2), (3), and (12) (Vernon Supp. 1980–81). The district court concluded, also, that because appellant relied upon the insurance policy and took no further action to obtain insurance to protect its security interest, appellant suffered a loss of $1,209.84.

The further conclusions of the district court were that the insurance policy excluded coverage of any loss that occurred while an unlicensed driver was driving the insured auto; appellant's loss was excluded from coverage by the terms of the insurance policy; and appellant as loss payee was not entitled to recover for a loss that was excluded from coverage under the terms of the policy.

## LOSS PAYABLE CLAUSE ISSUE

By its first point of error, appellant claims the district court erred in rendering judgment for the insurance company since, as a matter of law, appellant's loss was covered by the Form 112A Loss Payable Clause in the policy. The 112A Loss Payable Clause of the policy in this appeal contains language usually described as the "union mortgage clause." 5A J. Appleman, Insurance Law and Practice § 3401 (1970). Appleman discusses the difference between the "union mortgage clause" and other types of mortgage clauses, at least insofar as fire insurance policies are concerned.

There are several different types of common loss payable or mortgage clauses. The open loss payable clause simply states that "loss, if any, is payable to B. as his interest shall appear", or uses other equivalent words, merely identifying the person who may collect the proceeds. However, there is another type variously known as the New York, standard, or union form which contains a somewhat similar expression, and then goes on to state that "this insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership or [sic] the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the same."

Not all such wordings are identical, but it will be seen that the open loss payable clause is distinctly different from the latter forms. Only by explaining this difference now can confusion be avoided later, as entirely different results obtain under the two different forms. In the union, standard, or New York forms, the mortgagee may become liable to pay the premium to the insurer—in return, it is freed from policy defenses which the company may have against the mortgagor. In the open form, the mortgagee stands in the mortgagor's shoes, and is usually considered subject to the same defenses.

\* \* \* \* \* \*

Some cases have held that a mortgage loss payable clause is, in effect, an independent agreement with the mortgagee, creating an independent contract between the company and the mortgagee for the latter's benefit. It is definitely true that this result obtains under a union or standard mortgage clause, it being considered that there the insurer has entered into a separate contract with the mortgagee just as if the latter had applied for the insurance entirely independently of the mortgagor. So far as the mortgagor is concerned, such a policy operates as excess coverage over and above the mortgagee's interest.

Under a standard mortgage clause, the result has been that the courts have held that the agreement of the company with the mortgagee being separate and divisible from that with the mortgagor, the mortgagee cannot be affected by any act or default of the mortgagor, and any breach of the policy terms and conditions committed by the mortgagor is no defense to an action by the mortgagee. Elsewhere it has been stated that the rights of a mortgagee, even in a standard clause, may be subject to all terms and conditions of the policy except those expressly waived by the insurer.

A distinction which is rather important to grasp is that the policy terms are them-

selves not nullified by a standard mortgage clause. It is, rather, that a new contract containing those provisions is made with the mortgagee personally; and the mortgagee is not bound by the mortgagor's contract which, while it may be identical in language, may be breached by the mortgagor's act. In other words, the indemnity of the mortgagee is not placed at the whim of his debtor, and is subject only to breaches of which the mortgagee is, himself, guilty. It has been properly stated that in some instances, certain of the provisions of the fire policy are modified and, under certain conditions, even omitted by the new agreement which springs from the mortgage clause and the insurance policy. [footnotes omitted]

The "union mortgage clause" concept in fire insurance has long been recognized in Texas, *Camden Fire Ins. Ass'n v. Harold E. Clayton & Co.*, 117 Tex. 414, 6 S.W.2d 1029 (1928); see also *St. Paul Fire & Marine Ins. Co. v. E. L. Crutchfield*, 162 Tex. 586, 350 S.W.2d 534 (1961); *Georgia Home Insurance Co. v. Golden*, 127 Tex. 93, 91 S.W.2d 695 (1936) and presently forms the basis for Tex.Ins.Code Ann. art. 6.15 (Vernon 1981).

The "union mortgage clause" is presently found in automobile collision and damage insurance policies. An article in the *Texas Bar Journal* discusses the loss payable endorsements in the Texas policy forms and compares the "union mortgage clause" with the "open mortgage clause":

Automobile mortgages or lien holders may be named in the Texas Standard Automobile Policy as additional insureds by either of two standard automobile loss payable endorsements. These endorsements apply only to automobile insurance and to no other type of property or casualty insurance. Endorsement Clause 112 and Endorsement Clause 112A are prescribed by the State Board of Insurance under the authority of Article 5.06, Texas Insurance Code of 1951, as amended. Endorsement Clause 112, often called the open or simple mortgage clause, simply makes the mortgagee or lien holder the appointee of the insured mortgagor.

Endorsement Clause 112A, similar to the standard or union mortgage clause, creates an independent contract of insurance between the mortgagee and the insurer. The court in interpreting Endorsement Clause 112A have often relied on interpretations of standard or union mortgage clause provisions of building insurance policies.

Stripling and Wood, *Mortgagee's Rights Under the Texas Standard Automobile Policy*, 37 Tex.B.J. 945 (1974).

In defense of the judgment the insurance company argues irrespective of the provisions of the loss payable clause, the loss in this case was excluded from coverage because the automobile was operated by an unlicensed driver when wrecked. Appellee claims that the loss payable clause, which protects the mortgagee from forfeiture of the policy due to the acts of the insured, does not come into effect where there is a valid policy, since, due to the exclusion, there is no loss *under the policy*. Appellee states, correctly, that the facts in *U. S. Trust & Guaranty Co. v. West Texas State Bank of Snyder*, 272 S.W.2d 627 (Tex.Civ. App.1954, writ dism'd) are very similar to those in the instant appeal. *Snyder* holds that notwithstanding a "union mortgage clause" contained in a policy, a mortgagee cannot recover for a loss occasioned by the mortgagor when the risk, driving the automobile outside the United States, was specifically excluded by the policy. Appellee characterizes the inquiry in cases of this kind as being whether the loss was covered by the insurance policy and not whether the mortgagor violated a condition of the insurance policy, resulting in a forfeiture. The insurance company claims *Camden, Golden,* and *Crutchfield* are distinguishable from the case at bar since in each of those cases the loss involved was not excluded by the policy, but rather in each the mortgagor violated a condition of the policy.

The mortgagee obtains a "union mortgage clause" in the policy because he is not in possession or control of the automobile and he desires to be protected from any

act of the mortgagor that prejudices his interest. The Form 112A Loss Payable Clause, Texas Standard Automobile Endorsement, provides that insurance as to the mortgagee's interest in an automobile shall not be invalidated "by any act or neglect" of the mortgagor. This clause constitutes an independent contract between the insurer and the mortgagee covering the mortgagee's insurable interest, and not merely the property, and is affected only by acts of the mortgagee. *Georgia Home Insurance v. Golden, supra.* This contract between the insurer and the mortgagee can be invalidated solely by acts of the mortgagee, and is not affected by any act or neglect of the mortgagor in violation of the policy of which the mortgagee is uninformed. There is, of course, no question but that the loss here involved resulted from an "act or neglect" of the mortgagor in allowing an unlicensed operator to drive the automobile.

In response to appellee's argument, it should be observed that the *Camden, Golden,* and *Crutchfield* decisions do not distinguish whether the circumstances that precluded recovery by the mortgagor was a matter *excluded from* coverage or was a *condition to* recovery. This Court is convinced that the reasoning in *Snyder* defeats the purpose of the "union mortgage clause" provision found in Form 112A, and therefore, respectfully declines to follow the holding in that case.

### AGENCY ISSUE

By cross-point, the insurance company advances the claim that the district court erred in concluding Schuler was acting as agent for it when he forwarded the insurance policy to appellant. To the contrary, the insurance company maintains that Schuler was an agent of the *insured,* and not of the insurer.

The rule is that although an insurance broker acts for the insured in making the application for insurance and in processing the policy, he acts for the insurer in delivering the policy and in collecting and remitting the premium. *Foundation Reserve Insurance Co. v. Wesson,* 447 S.W.2d 436 (Tex.Civ.App.1969, writ ref'd). Under such rule, the question is usually one of fact. Agency and the extent of the agent's authority may be shown by circumstantial evidence. *Foundation Reserve Insurance Co. v. Wesson, supra.* In this connection, it should be observed that in the past the Womach Agency had issued policies for appellee, and that appellee's general agent Smith had forwarded those policies to the Womach Agency. Under these circumstances, the district court correctly concluded, pursuant to *Foundation Reserve Insurance Co. v. Wesson, supra,* that Schuler acted as agent for appellee in delivering the insurance policy to Mrs. Benavides and Chapman. The cross-point is overruled.

The judgment is reversed. Judgment is rendered for appellant for $6,629.52.[1]

Reversed and Rendered.

---

1. Reasonable attorney's fees for services rendered through representation in this Court were $3,000. Appellant's actual loss, $1,209.84, trebled is $3,629.52.