IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 25, 2000 Session

**ED REEVES, d/b/a ED'S IMPORTS v.
GRANITE STATE INSURANCE CO.**

**Appeal from the Court of Appeals, Middle Section
Chancery Court for Grundy County
No. 4708    Jeffrey F. Stewart, Chancellor**

**No.  M1998-00286-SC-R11-CV - Filed January 12, 2001**

We accepted review in this case to determine whether the rights of Ed Reeves, the loss payee, were extinguished by cancellation of an automobile policy by the issuer, Granite State Insurance Co., where the cancellation had been occasioned by the insured's misrepresentation.  The trial court found that the policy should be construed to require notice to the loss payee before cancellation could affect the loss payee, that any ambiguity should be resolved in favor of the loss payee, and that the loss occurred prior to the notice of cancellation of the policy.  The Court of Appeals affirmed.  We conclude that Granite State cannot extinguish the loss payee's interest because of acts or omissions of the insured except those enumerated in the loss payable clause, which is of the standard/union type.  Accordingly, the judgment of the Court of Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William G. McCaskill, Jr., Nashville, Tennessee, for the appellant, Granite State Insurance Co.

Robert S. Peters, Winchester, Tennessee, for the appellee, Ed Reeves.

**OPINION**

I.  Facts and Procedural History

The facts in this case are undisputed.  On February 28, 1996, the plaintiff, Ed Reeves, doing business as Ed's Imports, sold a vehicle to Craig Steve Nance and financed the sale as well.  They agreed that Nance would protect Reeves's interest in the vehicle.  On the day of purchase, Nance applied for insurance coverage from Granite State Insurance Co. (Granite State), the defendant. The policy issued by Granite State designated Ed's Imports, as the loss payee.

On June 10, 1996, Nance reported that the insured vehicle had been stolen. Granite State initiated an investigation and determined that Nance had been convicted of felonious possession of marijuana. On the insurance application, however, Nance stated that no one in his household had "been arrested for any offense other than traffic offenses." Because the conviction pre-dated the application, Nance's representation was obviously false. Based upon the falsity of the representation, Granite State cancelled the policy *ab initio*. Reeves, as loss payee, attempted to recover from Granite State; his claim was denied.[1]

Reeves filed suit in the Chancery Court of Grundy County. The trial court found that the policy should be construed to require notice to the loss payee before cancellation could affect the loss payee, that any ambiguity should be resolved in favor of the loss payee, and that the loss occurred prior to the notice of cancellation of the policy. The trial court awarded Reeves the stipulated damages of $12,008. Granite State appealed; the Court of Appeals affirmed.

We granted Granite State's application for permission to appeal to determine whether, under the circumstances, Granite State could terminate Reeves's rights as loss payee.

## II. Standard of Review

Where the only issue for review is purely a question of law, our review is de novo with no presumption of correctness given the judgments of either the trial court or the Court of Appeals. Estate of Hume v. Klank, 984 S.W.2d 602, 604 (Tenn. 1999); see, e.g., City of Tullahoma v. Bedford County, 938 S.W.2d 408, 412 (Tenn. 1997).

## III. Analysis

The issue before this Court is whether Granite State's *ab initio* cancellation of the policy due to the insured's misrepresentation terminated Reeves's rights as loss payee. To address this issue, we must first determine the nature of Reeves's rights as loss payee. The following is the pertinent policy language described as the "loss payable clause":

> Loss or damage under this policy shall be paid, as interest may appear, to [the insured] and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of [the insured's] fraudulent acts or omissions unless the loss results from [the insured's] conversion, secretion or embezzlement of "[the insured's] covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and cancellation shall terminate this agreement as to the loss payee's interest. We will give the same

---

[1]Granite State's right to retroactively cancel Nance's rights under the policy is not in dispute.

advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

There are essentially two types of loss payable clauses in which a loss payee's interest in property is protected should a loss occur: "standard/union" or "simple/open." Under a simple/open clause, the loss payee's rights are no greater than those of the insured. See Hocking v. Virginia Fire & Marine Ins. Co., 42 S.W. 451 (Tenn. 1897); see also Central Nat'l Ins. Co. v. Manufacturers Acceptance Corp., 544 S.W.2d 362, 364 (Tenn. 1976). This Court, in Hocking and in Central National Insurance Co., further defined the nature of a simple/open clause. In Hocking, this Court held that the act of the insured in burning down the covered property extinguished the insured's right to recover under the insurance contract as well as the right of the mortgagee or loss payee. Hocking, 42 S.W. at 451. This Court in Central National Insurance Co. reached a similar result. In that case, we held that because the insurance contract did not contain any provision that protected the interest of the mortgagee[2] from acts or omissions of the insured, the invalidating acts or omissions of the insured defeated not only the insured's rights but those of the mortgagee as well. Central Nat'l Ins. Co., 544 S.W. at 364.

The standard/union clause is the second type of loss payable clause. The essential nature and function of the standard/union clause is "to furnish to the mortgagee a reliable security in a definite sum free from any interference on the part of the mortgagor which would, to any extent, invalidate or make less adequate that security." Laurenzi v. Atlas Ins. Co., 176 S.W. 1022, 1026 (Tenn. 1915). To accomplish this purpose, specific language is included in the loss payee clause to prevent the policy from being invalidated by the insured's acts or neglect. See 4 Lee R. Russ, Couch on Insurance § 65.48 (3d ed. 1997).

The chief distinction between the two types of clauses is that the standard/union clause establishes a contract between the insurer and loss payee. This Court in Laurenzi recognized this distinction when it stated,

> [T]he contract evidenced by the rider is a separate and distinct one with the mortgagee, designed for his protection, and in operation from the date of its execution; that, in so far as the policy or contract with the mortgagor is in harmony therewith, it is to be referred to, to supplement and complete the terms of the mortgagee's contract, and, in so far as the policy is out of harmony with the rider, such adverse provisions are to be disregarded; and, further, that under such a contract the security of the mortgagee cannot be invalidated, either in whole or in part, by any act or neglect of the mortgagor, either prior or subsequent to the execution of such contract with the mortgagee.

---

[2] We use the terms "mortgagee" and "loss payee" interchangeably where the mortgagor or insured agrees to insure the property for the benefit of the mortgagee or loss payee which gives the mortgagee or loss payee an equitable lien on the proceeds of the insurance policy. See 15 Tenn. Jur. Insurance § 72 (1984).

Laurenzi, 176 S.W. at 1024.

In the present case, the loss payable clause states:

> "This insurance with respect to the interest of the loss payee, shall not become invalid because of [the insured's] fraudulent acts or omissions unless the loss results from [the insured's] conversion, secretion or embezzlement of '[the insured's] covered auto.'"

Granite State contends that the loss payable clause grants Reeves, the loss payee, no greater rights than those of the insured, and thus Reeves "stands in the shoes of the insured." Reeves is not protected from the insured's "conversion, secretion or embezzlement" of the covered automobile. Reeves, however, has additional protection in that he is protected from the insured's individual acts or omissions except for the insured's conversion, secretion, or embezzlement. We hold that the loss payable clause in this case is of the standard/union type because it confers greater rights on Reeves, the loss payee, than it confers on the insured, thus establishing a contract between Granite State and Reeves.

In the instant case, Granite State contends that because cancellation of the policy was based on the insured's fraud in the inception of the contract rather than on the insured's fraud in connection with loss, the cancellation is effective against Reeves, the loss payee, to the same extent as against the insured. The language of the loss payable clause upon which Granite State relies states, "[W]e reserve the right to cancel the policy as determined by the policy terms and cancellation shall terminate this agreement as to the loss payee's interest." In response, Reeves relies upon the language in the loss payable clause which states, "This insurance with respect to the interest of the loss payee, shall not become invalid because of [the insured's] fraudulent acts or omissions unless the loss results from [the insured's] conversion, secretion or embezzlement of '[the insured's] covered auto.'" Granite State's specification of those acts which will invalidate the policy in effect assures Reeves that the policy will not be invalidated for those acts committed by the insured which do not constitute "conversion, secretion or embezzlement." Granite State's act of retroactively canceling Reeves's interest due to the insured's misrepresentation invalidates the contract for an act by the insured not specified in the standard/union clause. It is undisputed that the insured's misrepresentation cancels the policy as to the insured's interest, but based on the plain and ordinary meaning of the terms "invalid" and "cancel," Granite State cannot invalidate or cancel Reeves's interest absent "conversion, secretion or embezzlement." Granite State asks this Court to limit the application of the loss payable clause to the situation in which cancellation is based on the insured's fraud in connection with "loss." The loss payable clause, however, does not contain such a limitation. We therefore hold that Granite State cannot extinguish Reeves's interest because of acts or omissions of the insured except those enumerated in the standard/union clause of the policy. Because of our holding in this case, we do not reach the other issues raised by Granite State.

## IV.  Conclusion

We are of the opinion that the loss payable clause is of the standard/union type which establishes a contract between Granite State and Reeves, the loss payee.  We further hold that Granite State cannot retroactively terminate Reeves's interest as loss payee because of acts or omissions of the insured except those enumerated in the standard/union clause of the policy. Accordingly, we affirm the judgment of the Court of Appeals.  Costs of this appeal are taxed to Granite State Insurance Co.

_____
ADOLPHO A. BIRCH, JR., JUSTICE