**OLD AMERICAN MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**GULF STATES FINANCE COMPANY, Appellee.**

No. 01–01–00242–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 14, 2002.

Supplemental Opinion on Denial of Rehearing March 21, 2002.

H. Miles Cohn, Sheiness, Scott, Grossman & Cohn, L.L.P., Houston, for Appellant.

William T. Green, III, Green, Downey, Patterson & Schultz, Houston, for Appellee.

Panel consists of Justices COHEN, HEDGES, and TAFT.

## OPINION

COHEN, Justice.

Does the "loss payable clause," form 530(A) in the standard Texas Personal Auto Policy, insure the loss payee for damage that occurred when the car was driven by a driver excluded under the policy? We hold it does not. Although this form gives the loss payee some rights greater than the insured's, it does not cover the loss payee when the insured entrusts the car to an excluded driver. Accordingly, we reverse and render.

## BACKGROUND

Appellant, Old American County Mutual Fire Insurance Company, issued to Laurie Hosch ("insured") a Texas personal auto policy that excluded James Gregoroff as a covered driver. Appellee, Gulf States Finance Company, held the mortgage on the car and thus was a payee under the policy's loss payable clause.

After insured's car was damaged while Gregoroff was driving, Old American refused coverage because Gregoroff was excluded. Relying on policy form 530A, the mortgagee clause,[1] Gulf States sued for contract breach and violation of the insurance code. Both parties moved for summary judgment. The trial court granted Gulf States's motion and denied Old American's.

## STANDARD OF REVIEW

We follow the usual standard of review for an order that denies one party's summary judgment motion and grants the other's. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999). The parties

agree that insured (Hosch) cannot recover because of Gregoroff's exclusion and, thus, neither can Gulf States unless its rights are greater than insured's. Gulf States contends its rights are greater than insured's because the loss payable clause provides for it to be paid despite Gregoroff's exclusion. Thus, the meaning of that clause is the controlling issue.

## MORTGAGEE CLAUSE

■ In its first point of error, Old American contends that the loss payable clause does not protect Gulf States against the loss of coverage from any "act or omission" of insured, but only against the loss of coverage from insured's fraudulent conduct.

The loss payable clause provides

Loss or damage under Coverage for Damage to Your Auto shall be paid as interest may appear to you and the loss payee shown in the declarations. This insurance covering the interest of the loss payee shall not become invalid because of your fraudulent acts or omissions, unless the loss results from your conversion, secretion or embezzlement of your covered auto....

■ What is the meaning of this language? The cases tell us that there are several common types of loss payable clauses. One is the "open" clause, which states, like the first sentence above, that any loss is payable to the mortgagee as its interest may appear. *Don Chapman Motor Sales, Inc. v. Nat'l Sav. Ins. Co.*, 626 S.W.2d 592, 595 (Tex.App.—Austin 1981, writ ref'd n.r.e.). Such language means that the loss payee stands in the shoes of

1. The "mortgagee clause" and "loss payable clause" mean the same thing, *i.e.*, the form 530A quoted below. Likewise, the terms "loss payee" and "mortgagee" are used interchangeably, as are the terms "mortgagor" and "insured." The cases on this subject use the terms interchangeably; therefore, we do so in order to make it clear that we are discussing the same things they are.

the insured; it enjoys the same rights, as the insured, no more, no less.

■ A second common loss payable clause, like that, in *Chapman,* provides that "this insurance as to (the loss payee's) interest . . . shall not be invalidated *by any act or neglect of the mortgagor." Id.* at 594 (emphasis added). This language gives the loss payee greater rights to recovery than the insured; thus, the loss payee/mortgagee in *Chapman* was allowed to recover even though the insured could not because she let an excluded driver drive. *Id.* at 594, 596–97. As the *Chapman* court stated, "There is, of course, no question but that the loss here involved resulted from an 'act or neglect' of the mortgagor in allowing the unlicensed operator to drive the vehicle." *Id.* at 597. We agree with that result in *Chapman,* given the particular policy language there. The policy language here, however, is much less favorable to the loss payee.

The language construed in *Chapman* was the then-current form 112A of the Texas Standard Automobile Endorsement. *Id.* at 597. Protecting the loss payee from "any act or neglect" of the mortgagor/insured, as in form 112A, grants to mortgagees the broadest protection imaginable from the conduct of their mortgagors. It is the total opposite of an "open" clause, which gives the mortgagee no rights at all beyond those of the insured.

Form 530A, the clause in this case, is neither an open clause nor an "any act or neglect clause." Its language falls between those two extremes. Form 530A gives the mortgagee much more protection than an "open" clause, but much less protection than the form 112A in *Chapman.* Thus, the *Chapman* court could accurately say, "This contract between the insurer and the mortgagee can be invalidated solely by acts of the mortgagee, and is not affected by *any act or neglect* of the mortgagor. . . ." *Id.* at 597 (emphasis added). Here, in contrast, Gulf States is not protected by form 530A from loss of coverage because of "any act or neglect" of insured; it is protected *only* from insured's "fraudulent acts or omissions," not from "any [other] act or neglect." Thus, if insured were to lose her coverage for any reason other than fraudulent acts or omissions, Gulf States would lose its coverage, too.

That is what happened here. Insured lost her coverage because she entrusted her car to an excluded driver. That was not a "fraudulent act or omission" on her part. It was not even a breach of contract. The policy did not prohibit Gregoroff from driving the car, and nobody accuses insured of fraud.

The following example shows the extent to which form 530A increased Gulf States's rights. Suppose that insured had lied to Old American on her insurance application by claiming that no one in her household had a criminal record. That "fraudulent act or omission" would have forfeited her coverage, but under form 530A, it would not have forfeited Gulf States's coverage because her fraud was not a "conversion, secretion or embezzlement" of her auto. Those were the facts in *Reeves v. Granite State Insurance Co.,* 36 S.W.3d 58 (Tenn. 2001). That case construed a loss payee clause like form 530A.[2] *Id.* at 60. The Tennessee Supreme Court unanimously declared:

> Reeves [the mortgagee] is not protected from the insured's "conversion, secretion or embezzlement" of the covered automobile. Reeves, however, has additional protection in that he is protected from

---

**2.** Gulf States's cited cases all involved clauses like that in *Chapman,* which protected loss payees from "any act or neglect" of the insured. Consequently, they are not in point.

the insured's individual [fraudulent] acts or omissions except for the insured's conversion, secretion or embezzlement ... Granite State's specification of those acts which will invalidate the policy in effect assures Reeves that the policy will not be invalidated for those [fraudulent] acts committed by the insured which do not constitute conversion, secretion or embezzlement.

*Id.* at 61.

■ We agree with the *Chapman* court that the loss payable clause constitutes an independent contract between the insurer and the mortgagee. *Chapman,* 626 S.W.2d at 597. The important point, however, is that the contract between the insurer and the mortgagee is identical to the contract between the insurer and the insured—except as specifically changed by the loss payable clause—and form 530A changes the contractual coverage only by exempting the mortgagee from some fraud defenses applicable against the insured. Form 530A does not even mention, much less negate, any other defenses, and it has conspicuously abandoned the unlimited protection formerly bestowed on mortgagees by the words "any act or neglect" in form 112A. Because Old American has asserted no fraud defenses, the loss payable clause here does not help Gulf States. It is irrelevant to Gulf States's claim. When Gregoroff drives, there is no coverage in this policy for the insured. When Gregoroff drives, there is no coverage in form 530A for Gulf States.

We sustain Old American's first point of error. Therefore, we need not reach its second.

The judgment in favor of Gulf States is reversed, and we render judgment that Gulf States take nothing.

## SUPPLEMENTAL OPINION ON REHEARING

We **deny** Gulf States Finance Company's motion on rehearing, but supplement our original opinion of February 14, 2002.

Neither in the original briefing in this case, nor on Gulf State's motion for rehearing, has any party cited a case that construed language in a loss payable clause like that in the case before us. The only case we found construing such language was *Reeves v. Granite State Insurance Co.,* 36 S.W.3d 58, 62 (Tenn.2001). On rehearing, Gulf States contends that Reeves supports it, not Old American.

We agree with the result in Reeves, but we acknowledge that the Reeves court treated language like that now before us as if it were a "standard/union" clause that protected the mortgagee from any "acts or omissions" of the insured. *Id.* at 62 ("We therefore hold that Granite State cannot extinguish Reeves's interest because of acts or omissions of the insured except those enumerated in the standard/union clause of the policy."). That quoted statement does support Gulf States, but we do not agree with that conclusion in Reeves. As we stated in our original opinion, the clause before us is not a "standard/union" clause because it does not say that the mortgagee is protected from "any act or neglect" or "any omission" of the insured; that language is the hallmark of a standard/union clause. We disagree with Reeves that "[t]here are essentially two types of loss payable clauses ... 'standard/union' or 'simple/open.'" *Id.* at 60. We have in this case a third type of loss payable clause, just as, in our opinion, the Reeves court had. This third type of clause is unlike the other two, and we are apparently the first to declare that this completely different language has a different meaning from the familiar standard/union clause. It was not necessary

for the Reeves court to classify its clause as a standard/union clause in order to reach its result. By giving the clause in Reeves its plain meaning, without forcing the clause into an ill-fitting standard/union category, the Tennessee court would have reached the same conclusion.

We adhere to our original opinion and deny Gulf State's motion for rehearing.