

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| STADIUM AUTO, INC., | § | No. 08-11-00301-CV |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 3 |
| LOYA INSURANCE COMPANY, | § | of Tarrant County, Texas |
| Appellee. | § | (TC # 2010-084040-3) |
|  | § |  |

## **O P I N I O N**

Stadium Auto, Inc. appeals from a summary judgment granted in favor of Loya Insurance Company.  For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

On March 10, 2009, Olga Salazar purchased a 2005 Ford Expedition from Stadium. Salazar financed the purchase through Stadium.   On that same date, Loya issued a Texas standard auto policy to Salazar for the vehicle.   The policy included an exclusion of named driver endorsement (also referred to as 515A Endorsement) and listed Junior Sanchez as an excluded driver.  On April 30, 2010, Junior Sanchez was operating the vehicle when it collided with a car driven by Gilberto Adiel El Fuentes.  According to Salazar, Sanchez took her keys out of her purse and drove the vehicle without her permission.  Salazar stopped making payments to

Stadium for the vehicle and she sought coverage under the policy for the vehicle. Stadium made demand on Loya under the loss payable clause of the insurance policy. Loya refused to pay based on the 515A Endorsement.

Stadium filed suit against Loya alleging that its denial of Stadium's claim violated Section 541.060 of the Texas Insurance Code. The suit also alleged that Loya violated Section 17.46(b) of the Texas Deceptive Trade Practice Act by representing that the policy conferred rights, remedies, and obligations it did not have and the conduct constituted false, misleading, and deceptive acts or practices in the conduct of a trade or business such that it was subject to the remedies provided in Section 17.50. Stadium's suit also included a claim that Loya was estopped from denying its liability based on the 515A Endorsement.[1]

Loya moved for summary judgment on the ground it did not owe a duty to pay Stadium under the loss payable clause (also referred to as the 530A Endorsement or the 530A loss payable clause) because the policy did not insure Stadium for damage occurring when the car was operated by a driver excluded under the policy. Stadium filed a counter-motion for summary judgment on the ground that the 530A loss payable clause obligated Loya to pay Stadium the value of the vehicle. The trial court denied Stadium's motion, but granted summary judgment in favor of Loya without specifying the precise basis for its ruling.

## SUMMARY JUDGMENT

In its sole issue on appeal, Stadium contends that the trial court erred by denying its

---

[1] In this same suit, Stadium Auto also sued Olga Salazar, Junior Sanchez, and Gilberto Adiel El Fuentes. Stadium Auto took a post-answer default judgment against Salazar in the amount of $10,010.00 and against Sanchez in the amount of $7,200 on August 12, 2011. Stadium Auto's claim against Gilberto Adiel El Fuentes was dismissed with prejudice because it settled the dispute with him. None of these three defendants is a party to this appeal.

summary judgment motion and by granting summary judgment in favor of Loya.

*Standard of Review -- Traditional Summary Judgment*

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc*., 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. When competing motions for summary judgment are filed, and one is granted and the other denied, we consider the summary judgment evidence presented by both sides, determine all issues presented, and if we find that the trial court erred, we render the judgment the trial court should have rendered. *Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as in this case, the court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Insurance Company v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

*Stadium's Causes of Action*

Stadium sued Loya under Section 541.151 of the Texas Insurance Code which authorizes

a private action for damages. TEX.INS.CODE ANN. §541.151 (West 2009). The statute provides that:

> A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:
>
> (1) defined by Subchapter B[2] to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or
>
> (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

TEX.INS.CODE ANN. § 541.151. Stadium's pleadings assert a cause of action under both subsections (1) and (2) of Section 541.151. First, it alleged that Loya engaged in unfair settlement practices under Section 541.060 by denying liability pursuant to the 515A Endorsement. *See* TEX.INS.CODE ANN. § 541.060. Second, it alleged that this same conduct violated Section 17.46(b)(12). *See* TEX.BUS.&COM.CODE ANN. § 17.46(b)(12)(West 2011) (providing that false, misleading, or deceptive acts or practices includes representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law).

Stadium's suit also alleged that Loya was "estopped from denying its liability pursuant to the statements contained in the declaration." More specifically, Stadium asserted that the loss payable clause, or the 530A Endorsement, provides coverage to the loss payee despite the named driver exclusion.

---

[2] Subchapter B defines unfair methods of competition and unfair or deceptive acts or practices. *See* TEX.INS.CODE ANN. §§ 541.051-541.057, 541.059-541.061 (West 2009 and West Supp. 2012-13). It also defines certain practices that are not considered to be discrimination or inducement. TEX.INS.CODE ANN. § 541.058 (West 2009).

*The Grounds for Summary Judgment*

In its motion for summary judgment, Stadium asserted that the 530A loss payable clause obligated Loya to pay Stadium the value of the vehicle. Loya filed a traditional summary judgment motion with respect to all of the causes of action alleged in the live pleadings. With respect to the violations of the Insurance Code, Loya contended that the summary judgment evidence established as a matter of law that it did not violate Section 541.060 because it did not misrepresent a material fact or policy provision relating to coverage. With respect to the alleged violation of Section 17.46(b)(12), the summary judgment motion asserted that Loya did not represent that the policy conferred rights, remedies, or obligations that it did not have, and the policy provisions are not the producing cause of Stadium's actual damages. Loya's summary judgment motion also asserted that the estoppel claim failed because the evidence conclusively established that: (1) Loya did not make a false representation to, or conceal a material fact from Stadium; (2) Stadium either knew or had the means of knowing the real facts; and (3) Stadium did not rely on the representation to its detriment. The trial court granted summary judgment in favor of Loya, and denied Stadium's summary judgment motion, without specifying the exact basis for its ruling.

*Stadium's Arguments on Appeal -- Waiver*

Stadium presents a single argument on appeal, namely, that Loya is obligated to pay the claim under the loss payable clause. This was the basis for Stadium's motion for summary judgment. As part of this argument, Stadium asserts that the car was taken by an excluded driver, Junior Sanchez, without the insured's consent. Stadium argues for the first time on

appeal that this act constituted theft of the vehicle and it reasons that Part D of the policy covered theft of the vehicle. Stadium also argues that Salazar's failure to prevent Sanchez from driving the vehicle constituted an omission on the part of the insured, and therefore, Loya is obligated to pay under the loss payable clause. While Stadium presented to the trial court the argument regarding an omission and liability under the loss payable clause, it did not argue in its summary judgment response or motion that Loya's act amounted to theft or that the policy covered theft of the vehicle. This is a distinct legal theory from the argument Stadium made about the 530A loss payable clause. Under Rule 166a(c), issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166a(c); *see Aguilar v. Trujillo*, 162 S.W.3d 839, 854 (Tex.App.--El Paso 2005, pet. denied)(finding issue waived because non-movant did not raise it in the summary judgment response). We conclude that Stadium waived its argument based on Junior Sanchez's alleged theft of the vehicle, but it preserved its argument regarding an omission on the part of the insured as it relates to the 530A loss payable clause.

*Construction of the Named Driver Exclusion and the 530A Loss Payable Clause*

The issues in this appeal revolve around the construction of the named driver exclusion and the 530A loss payable clause and their application to the undisputed facts. If Loya is correct that it is not obligated under the 530A loss payable clause to pay Stadium the value of the vehicle because the loss occurred when an excluded driver was operating the vehicle, then Loya is not, as a matter of law, estopped from denying its liability under the policy. Likewise, it would be entitled to summary judgment on the alleged violations of Section 541.060 of the Insurance Code

- 6 -

and Section 17.46(b)(12) of the DTPA.

Endorsement 515A, which is titled "EXCLUSION OF NAMED DRIVER AND PARTIAL REJECTION OF COVERAGES," provides as follows:

**WARNING**
**READ THIS ENDORSEMENT CAREFULLY!**

This acknowledgement and rejection is applicable to all renewals issued by us or any affiliated insurer. However, we must provide a notice with each renewal as follows:

'This policy contains a named driver exclusion.'

You agree that none of the insurance coverages afforded by this policy shall apply while The Excluded Driver is operating your covered auto or any other motor vehicle. You further agree that this endorsement will also serve as a rejection of Uninsured/Underinsured Motorist Coverage and Personal Injury Protection Coverage while your covered auto or any other motor vehicle is operated by the excluded driver.

Junior Sanchez is one of several excluded drivers listed in the 515A Endorsement. It is undisputed that Junior Sanchez was operating the vehicle at the time of the accident. The 515A Endorsement does not state that coverage is lost only when the insured entrusts the vehicle to a named excluded driver. It unambiguously states that none of the coverages afforded under the policy shall apply when the excluded driver is operating the vehicle. The summary judgment evidence established as a matter of law that the insured lost her coverage because an excluded driver was operating the vehicle at the time of the accident.

The only remaining issue is whether the 530A loss payable clause obligated Loya to pay even though the insured had lost coverage because the vehicle was operated at the time of the accident by an excluded driver. Stated differently, we must determine whether Stadium's rights

under the policy are coextensive with the rights of the insured or whether its rights are greater.

The relevant portion of the loss payable clause states as follows:

Loss or damage under Coverage for Damage to Your Auto shall be paid as interest may appear to you and the loss payee shown in the declarations. This insurance covering the interest of the loss payee shall not become invalid because of your fraudulent acts or omissions, unless the loss results from your conversion, secretion or embezzlement of your covered auto.

The First Court of Appeals considered an identical loss payable clause in *Old American Mutual Fire Insurance Company v. Gulf States Finance Company*, 73 S.W.3d 394, 395-96 (Tex.App.--Houston [1st Dist.] 2002, pet. denied). There, Old American refused coverage when the insured entrusted her vehicle to an excluded driver and the car was damaged. *Old American*, 73 S.W.3d at 395. The loss payee, relying on the 530A loss payable clause in the policy, sued for breach of contract and violation of the Insurance Code. The parties agreed that the insured could not recover because of the exclusion, and therefore, the loss payee could not recover unless its rights were greater than those of the insured. *Id.*

The court began its analysis by contrasting the clause with other common loss payable clauses. *Id.* at 395-96. The "open" loss payable clause states, like the first sentence in the 530A Endorsement, that any loss is payable to the mortgagee as its interest may appear. *Id.* at 395, *citing Don Chapman Motor Sales, Inc. v. National Savings Insurance Company*, 626 S.W.2d 592, 595 (Tex.App.--Austin 1981, writ ref'd n.r.e.). This means that the loss payee stands in the shoes of the insured and it enjoys the same rights as the insured, no more and no less. *Old American*, 73 S.W.3d at 395-96.

Another common loss payable clause provides that the insurance as to the loss payee's

interest is not invalidated by any act or neglect of the insured. *Old American*, 73 S.W.3d at 396. Under this type of loss payable clause, the loss payee can recover even if the insured allows an excluded driver to operate the vehicle. *See id.* (discussing the *Chapman* case); *Chapman*, 626 S.W.2d at 596-97 (where the loss resulted from an act or neglect of the insured in allowing the unlicensed operator to drive the vehicle, the loss payee was allowed to recover even though the insured could not because she let an excluded driver operate the vehicle). This type of loss payable clause gives the loss payee greater rights to recovery than the insured. *Old American*, 73 S.W.3d at 396.

The 530A loss payable clause at issue in *Old American* is not an open clause or an "any act or neglect clause" but instead falls in between the two types. *Id.* The 530A loss payable clause gives the loss payee more protection than an open clause but far less protection than the clause at issue in *Chapman*. *Id.* The First Court of Appeals concluded that the loss payee is not protected by the 530A loss payable clause from loss of coverage due to any act or neglect of the insured; it is protected *only* from the insured's fraudulent acts or omissions. *Id.* If the insured were to lose her coverage for any reason other than fraudulent acts or omissions, the loss payee would lose its coverage as well. *Id.* The court concluded that the insured lost her coverage because she entrusted her car to an excluded driver which the court determined is not a fraudulent act or omission on her part. *Id.* The court of appeals further stated that when an excluded driver drives, there is no coverage under the policy for the insured and there is no coverage under the 530A loss payable clause. *Id.* at 397. We agree with *Old American's* interpretation of the 530A loss payable clause.

Stadium seeks to distinguish *Old American* because the insured permitted an excluded driver to operate the vehicle, but in our case the excluded driver operated the vehicle without the insured's permission. Stadium contends that it is protected from loss of coverage because Salazar's failure to stop Junior Sanchez from driving amounted to an omission on her part. Stadium has not presented any authority in support of its contention that this is an omission on the part of the insured for purposes of the 530A loss payable clause. The summary judgment evidence showed that Sanchez took Salazar's keys and the vehicle without her permission, but there is no evidence of any omission on the part of Salazar. The policy did not prohibit Sanchez from driving and it did not impose a duty on Salazar to prevent him from driving the vehicle. She simply agreed that there would be a loss of coverage if he drove. We conclude that Salazar's failure to somehow prevent Sanchez from taking her keys and driving the car does not constitute an omission under the policy, and therefore, Stadium's rights under the policy are the same as the insured's rights. *See Old American*, 73 S.W.3d at 396-97 (concluding that insured's action of entrusting vehicle to excluded driver was not a fraudulent act or omission because the policy did not prohibit the excluded driver from driving the car; consequently, the 530A loss payable clause did not protect the loss payee and there was a loss of coverage for both the insured and the loss payee because an excluded driver operated the vehicle). Loya conclusively established that Salazar lost coverage under the 515A Endorsement because Sanchez drove the vehicle. Consequently, Stadium also lost coverage. The trial court correctly denied Stadium's motion for summary judgment and granted summary judgment in favor of Loya. We overrule the sole issue presented on appeal and affirm the judgment of the trial court.

June 26, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating