**Reversed and Remanded and Opinion filed May 15, 2014.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-12-01116-CV

### SWE HOMES, LP, Appellant

### V.

### WELLINGTON INSURANCE COMPANY, Appellee

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2012-08897**

## O P I N I O N

This appeal presents the question of whether a standard mortgage clause in a residential insurance policy provides coverage to a mortgagee for a loss by fire when the policy also contained a vacancy clause and the mortgagor had left the property vacant. Mortgagee SWE Homes, LP appeals from the trial court's grant of summary judgment favoring insurer Wellington Insurance Company, by which the court held that SWE's loss was not covered. We reverse and remand.

## *Background*

There is very little dispute regarding the facts in this case. Edgar Sadberry purchased a residential property with a mortgage from SWE. He bought a Texas Dwelling Policy from Wellington covering the property and naming SWE as the mortgagee. The effective dates of the policy ran from August 11, 2010 until August 11, 2011. The policy covered losses from various hazards including fire. It further contained a Mortgage Clause, which reads in pertinent part as follows:

> **19. Mortgage Clause . . . .**
>
> b. We will pay for any **covered loss** of or damage to buildings or structures to the mortgagee shown on the declarations page **as interests appear**. . . .
>
> d. **If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment** if the mortgagee:
>
>> (1) at our request, pays any premiums due under this policy, if you have failed to do so.
>>
>> (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.
>>
>> (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.
>
> All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

(emphases added).

As pertinent to this case, the policy also included as a condition a Vacancy Clause, which stated:

> **16. Vacancy.** During the policy term, if an insured building is vacant for 60 consecutive days immediately before a loss, we will not be liable for a loss by the perils of fire and lightning or vandalism or malicious mischief. Coverage may be provided by endorsement to this policy.

2

Sadberry's property was damaged in a fire apparently set by an unknown arsonist on December 23, 2010. Sadberry made a claim on his insurance policy, but after he admitted the property had been left vacant for over a year prior to the fire, Wellington denied the claim under the policy's Vacancy Clause.[1] SWE then filed a claim pursuant to the Mortgage Clause. When Wellington failed to respond, SWE filed suit. In its motion for summary judgment, Wellington argued that there was no "covered loss"—as required for a claim under the Mortgage Clause— because the property had been left vacant for over 60 consecutive days immediately before the loss occurred. In response, SWE argued that under the policy, coverage for the mortgagee could not be defeated by the mortgagor's actions triggering the Vacancy Clause when SWE had no knowledge of those actions. The trial court granted Wellington's motion and this appeal followed.

### *Standards of Review*

In a summary judgment case, the issue on appeal is whether the movant met its burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Texas courts generally interpret insurance policies according to the general

---

[1] Sadberry is not a party to this appeal. We assume, without deciding, that the denial of his claim and the application of the Vacancy Clause by Wellington were proper.

rules of contract interpretation. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). A court's primary goal is to determine the contracting parties' intent as expressed by the policy's written language interpreted through the application of established rules of construction. *See id.* Contracts should be construed as a whole, harmonizing and giving effect to all of the provisions so that none are rendered meaningless, no single provision taken alone will be given controlling effect, and all the provisions will be considered with reference to the whole instrument. *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003).

When a policy permits only one reasonable interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992). Whether a particular provision or the interaction between provisions creates an ambiguity is a question of law. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). The court decides whether an ambiguity exists by looking at the contract as a whole in light of the circumstances present when the contract was entered into and by applying proper canons of construction. *See id.* When a policy is ambiguous, however, Texas courts generally apply the canon of interpretation that courts should "construe [the policy's] language against the insurer in a manner that favors coverage." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

### *Parties' Positions*

In its sole issue, SWE contends that the trial court erred in granting summary judgment favoring Wellington. The parties' only real dispute on appeal revolves around whether SWE's claim under the Mortgage Clause is defeated by operation of the policy's Vacancy Clause. Wellington focuses on language in the Mortgage Clause, specifically in Paragraph 19(b), where it states that Wellington "will pay

4

for any covered loss . . . ." Wellington interprets this language as meaning that because Sadberry triggered the Vacancy Clause by leaving the property vacant for a prolonged period, the fire damage the property sustained was not a "covered loss," and thus, SWE was not entitled to recover under the Mortgage Clause. SWE, on the other hand, points out that this interpretation renders other sections of the Mortgage Clause meaningless, *e.g.*, the statement, in section 19(d) that if Sadberry's claim is denied due to his actions, SWE has the right to receive the loss payment under certain circumstances, including the condition that SWE inform Wellington of any change in occupancy or substantial change in risk that was known to SWE.[2] We agree with SWE.

*Analysis*

There are two common types of loss payable clauses in insurance policies relevant to our discussion. One is the "open" clause, which states simply that any loss is payable to the mortgagee "as its interest may appear." *See Old Am. Mut. Fire Ins. Co. v. Gulf States Fin. Co.*, 73 S.W.3d 394, 396 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Don Chapman Motor Sales, Inc. v. Nat'l Sav. Ins. Co.*, 626 S.W.2d 592, 595 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Under the open clause, the mortgagee stands in the shoes of the insured, enjoying the same rights as the insured, no more, no less—meaning, if coverage is defeated due to an act of the insured, the mortgagee likewise would be denied recovery. *See Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 913 n.3 (5th Cir. 1985). The other common type of loss payable clause, the "standard" mortgage clause, provides that "this insurance . . . shall not be invalidated by any

---

[2] SWE contended below that it had no knowledge of Sadberry's having vacated the premises or any other substantial change in risk, and Wellington produced no evidence to the contrary; therefore, the duty for SWE to notify Wellington of the change in occupancy or substantial change in risk under paragraph 19(d)(3) of the policy was not triggered.

5

act or neglect of the mortgagor." *Don Chapman*, 626 S.W.2d. at 594.[3]  Under the standard clause, the mortgagee has rights to recover even when the insured does not.[4]  *See Stadium Auto, Inc. v. Loya Ins. Co.*, No. 08–11–00301–CV, 2013 WL 3214618, at *4 (Tex. App.—El Paso June 26, 2013, no pet.); *Old Am.*, 73 S.W.3d at 396.  In *Don Chapman*, for example, the loss payee/mortgagee was allowed to recover even though the insured's claim was denied because the insured had allowed an excluded driver to drive the insured vehicle.  626 S.W.2d. at 596–97.  It is sometimes said that the standard mortgage clause creates a separate contract between the insurer and the mortgagee, in this case Wellington and SWE.  *See id.* at 595-96.  Therefore, under these types of clauses, acts committed by the mortgagor generally will not constitute a defense to an action by the mortgagee. *See id.* at 595.[5]

Both parties agree that the Mortgage Clause at issue here contained the latter type of loss payable clause, a standard clause.  Indeed, while the policy contains the open clause language, "[w]e will pay for any covered loss . . . to the mortgagee . . . as interests appear," it adds the standard language that "[i]f we deny your claim because of your [the insured's] acts or because you [the insured] have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment."  Of course, as discussed above, the coverage for the mortgagee is also

---

[3] The standard clause is sometimes referred to as the "union" or the "New York" clause. For ease of reference, we refer to it here only as the "standard" clause.

[4] Under the standard clause, the mortgagee may become liable to pay the premium to the insurer; in return, it is freed from policy defenses that the insurer may have against the mortgagor. *Don Chapman*, 626 S.W.2d. at 595.

[5] As one of our sister courts succinctly phrased it:  "Being a separate insurance contract on the mortgagee's interest, its validity . . . is not affected or invalidated by any act or neglect of the mortgagor in violation of the terms and conditions of the policy that are unknown to the mortgagee." *Travelers Indem. Co. v. Storecraft, Inc.*, 491 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1973, no writ).

subject to certain requirements, such as providing the insurer with notice of any change in occupancy or substantial change in risk known to the mortgagee.

Wellington nevertheless insists that application of the Vacancy Clause of the policy—which states, among other things, that Wellington is not liable for a loss due to fire if the damaged building was vacant for 60 consecutive days immediately before the loss—means that there was no "covered loss" that would require proceeds be paid to SWE under the Mortgage Clause. We do not agree with this interpretation of the policy, as it does not construe the document as a whole, harmonizing all of the provisions so that none are rendered meaningless. *See In re Serv. Corp.*, 355 S.W.3d at 661; *J.M. Davidson*, 128 S.W.3d at 235. Unquestionably, the policy covers damage from fire.[6] It is Wellington's burden to prove an exclusion applicable to SWE. While under the Vacancy Clause, there is no coverage for Sadberry for fire damage when the property has remained vacant for the specified period, the clear import of the standard loss payable language in the policy means that the Vacancy Clause does not operate to defeat coverage for SWE as mortgagee, so long as SWE meets the required conditions, such as informing Wellington of any change in occupancy or substantial change in risk that was known to SWE. This is true because it was Sadberry's actions as property owner that left the property vacant for the relevant time period and SWE had no knowledge of the vacancy. *See Don Chapman*, 626 S.W.2d. at 595. Under this

---

[6] Generally speaking, when an insured sues for coverage under an insurance policy, the "insured bears the initial burden of showing that there is coverage under [the] policy and the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage." *See, e.g., Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied). If the event were not a covered loss, there would be no need to deny coverage. A vacancy clause operates as an exclusion as it excepts a specific property condition from coverage. *See Farmers Ins. Exch. v. Greene*, 376 S.W.3d 278, 282 (Tex. App.—Dallas 2012, pet. granted).

reading, all policy provisions are harmonized and given effect.[7]

Moreover, even if the interpretation proffered by Wellington and favored by the trial court were correct, the provisions barring coverage would be rendered void by operation of Texas Insurance Code section 862.055, which states:

**§ 862.055. Fire Insurance: Interest of Mortgagee or Trustee**

(a) The interest of a mortgagee or trustee under a fire insurance contract covering property located in this state may not be invalidated by:

(1) an act or neglect of the mortgagor or owner of the property;

or

(2) the occurrence of a condition beyond the mortgagor's or owner's control.

(b) A provision of a contract that conflicts with Subsection (a) is void.

Again, the Wellington policy clearly covered fire as a hazard. If, as Wellington contends, certain language in the Mortgage and Vacancy clauses operates together to deny fire coverage to SWE as mortgagee based on Sadberry's action in leaving the property vacant, such provisions would be rendered void by operation of section 862.055.

### *Conclusion*

The trial court erred in granting summary judgment favoring Wellington based on application of the Vacancy Clause. Accordingly, we sustain SWE's sole issue, reverse the trial court's grant of summary judgment favoring Wellington,

---

[7] The Vacancy Clause still would operate to deny coverage to Sadberry when he left the property vacant, as indeed it so applied in this case. Furthermore, the Vacancy Clause could apply to defeat SWE's coverage should it be established that SWE had knowledge of the vacancy (a "change in occupancy") and neglected to inform Wellington.

8

and remand for further proceedings in accordance with this opinion.[8]

/s/    Martha Hill Jamison
        Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison.

---

[8] Although SWE sought and was denied a partial summary judgment on the issue of coverage in the trial court, SWE has not assigned error on appeal regarding this ruling.